UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

STEPHEN L. WEINBERG,

                Defendant.

REPORT & RECOMMENDATION

08-MJ-4140

---

Currently pending before the Court are motions by both the government and prior counsel for the defendant Stephen L. Weinberg for a judicial determination pursuant to 18 U.S.C. § 4241 that Weinberg is incompetent to stand trial. (Docket ## 2, 7). For the reasons set forth below, it is my recommendation that Weinberg be determined incompetent to stand trial.

## FACTUAL BACKGROUND

Weinberg has been charged in a criminal complaint with knowingly transmitting in interstate commerce a communication containing a threat to injure another person, in violation of 18 U.S.C. § 875(c). (Docket # 1). Specifically, the complaint charges that on October 21, 2008, Weinberg sent a communication by electronic mail to various recipients threatening to shoot Monroe County Court Judge Frank P. Geraci. (*Id.*). Two months earlier, Judge Geraci had presided over a case in which Weinberg was a party and in which Judge Geraci had ordered Weinberg to receive outpatient mental health treatment. (*Id.*).

On December 16, 2008, this Court ordered that Weinberg undergo a psychiatric evaluation at an appropriate federal medical facility to determine whether he is suffering from a mental disease or defect that renders him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (Docket # 9). On January 15, 2009, Weinberg was admitted to the Metropolitan Correctional Facility in New York City, where he underwent psychological testing and evaluation by a forensic psychologist, William J. Ryan, Ph.D.

Following that evaluation, Dr. Ryan submitted to this Court a written report dated March 4, 2009, recommending that Weinberg be declared incompetent to stand trial pursuant to 18 U.S.C. § 4241. (Docket # 13).

A competency hearing was scheduled for April 6, 2009, but on that date Weinberg requested appointment of new counsel. (Docket ## 14, 15). On April 23, 2009, this Court granted Weinberg's request, and the hearing was further adjourned to permit Weinberg's new counsel to arrange a psychiatric evaluation to be conducted by a defense expert. (Docket # 16). After several more adjournments to facilitate that evaluation, Weinberg's counsel advised that the evaluation had been completed and that the defense would not offer testimony from the defense expert. The competency hearing was held on December 11, 2009.[1] (Docket # 31). At the hearing, Dr. Ryan testified for the government, and Weinberg testified for the defense.

---

[1] The hearing was originally scheduled for November 13, 2009 (Docket # 29), but Dr. Ryan was unable to travel from New York City to Rochester that day because his flight was cancelled. No alternative flights were available that would have enabled Dr. Ryan to arrive in time for the hearing. At the parties' request, the hearing was adjourned until December 11, 2009. (Docket # 30).

**DISCUSSION**

A court must declare a criminal defendant incompetent to stand trial if it finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). According to the Second Circuit, the determination of competency turns on whether the defendant has "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)) (internal quotations omitted). In assessing competency, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Id*. at 411 (citing *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir. 1990)).

In concluding that Weinberg is currently incompetent to stand trial, I rely principally upon Dr. Ryan's hearing testimony, his written report, Weinberg's hearing testimony, and, to a lesser degree, upon my own observations of Weinberg during his numerous appearances before this Court.

I turn first to Dr. Ryan's written report and hearing testimony, which I credit. Dr. Ryan testified that he has been a licensed psychologist since 1987 and has worked as a forensic psychologist with the Federal Bureau of Prisons since 1993.[2] His duties in that capacity

---

[2] Before preparing this Report and Recommendation, the Court reviewed the digital recording of Weinberg's competency hearing held on December 11, 2009. The transcript of that hearing is not yet available.

primarily consist of making competency and criminal responsibility determinations for courts. He estimates that he makes approximately sixty to seventy-five such determinations annually. In determining competency, Dr. Ryan generally administers psychological tests to and conducts interviews with the defendant, reviews relevant records concerning the defendant and interviews the prosecutor and defense attorney.

Consistent with his general practice, Dr. Ryan administered the Minnesota Multiphasic Personality Inventory ("MMPI") test to Weinberg on January 20, 2009. The MMPI is a psychological test consisting of over five hundred true or false questions that the respondent answers about himself or herself, which is designed to measure and evaluate an individual's personality characteristics and psychological adjustment. According to Dr. Ryan, the results of the test administered to Weinberg revealed a "classic denial profile." In other words, Dr. Ryan explained, the test results showed that Weinberg had little insight about his mental illness issues. Dr. Ryan also conducted two clinical interviews of Weinberg, the first on January 20 and the second on February 8, 2009. (Docket # 13). The first interview lasted between sixty and ninety minutes, and the second interview lasted approximately an hour. Dr. Ryan also reviewed various records, including records relating to the pending prosecution; recent hospital records detailing Weinberg's over thirty-year history of mental illness and multiple involuntary admissions during that period; and, Weinberg's criminal history consisting of criminal charges dating back to 1973. (*Id*. at 2). Dr. Ryan also conducted telephone interviews with Weinberg's former counsel and the federal prosecutor in this case. (*Id*.).

Based upon his review of the records, his interviews of Weinberg and the attorneys involved in the case and results of the MMPI, Dr. Ryan diagnosed Weinberg as

suffering from the mental disease of schizophrenia of the paranoid type. (*Id*. at 8). Dr. Ryan found that Weinberg "expressed persistent delusional beliefs," both grandiose and persecutory in nature. (*Id*.). Specifically, Dr. Ryan noted that Weinberg persisted in "the somatic delusion that he is suffering from an infectious mouth disease, despite evidence against this." (*Id*.). Dr. Ryan further testified that although Weinberg earned a doctoral degree in physics in the 1970s, Weinberg's claim that his physics research was thirty years ahead of his colleagues was grandiose and implausible given his lack of meaningful employment in the physics field since then. In his report, Dr. Ryan observed that Weinberg's persecutory delusions "accounted for the disparity between his academic achievements and failure to launch a career. He accused people of sabotaging him and treating him unfairly. He claimed he has been repeatedly discriminated against and deprived of employment without reason." (*Id*. at 7). Specifically, at the hearing, Dr. Ryan testified that Weinberg believed that he was a victim of a "Nazi conspiracy" to suppress his academic achievements.

In addition, Dr. Ryan observed that Weinberg "exhibit[ed] pressured, disorganized speech" and that the schizophrenia had "impaired his social and occupational functioning." (*Id*. at 8). Dr. Ryan reported that during the clinical interview, Weinberg "presented a written list of topics he wanted to discuss," but "frequently interrupted himself," demonstrated "tangential" thinking and "appeared to have difficulty focusing on topics not involving his research or delusions." (*Id*. at 7). Dr. Ryan testified at the hearing that Weinberg was so frequently "sidetracked" in his conversation that Dr. Ryan "could never get a real clear communication as to what his issues were" and that Weinberg exhibited "frequent derailing of his thinking in that he rarely got to his conclusion." As Dr. Ryan noted in his report, "he also

5

provided inconsequential details and did not complete thoughts, which often led to incoherent, irrelevant discussions." (*Id*.).

> In Dr. Ryan's opinion,
>
> Mr. Weinberg's illogical and irrelevant speech compromises his ability to communicate. Mr. Weinberg is not currently capable of maintaining proper courtroom behavior, nor is he capable of appropriately attending to and participating in courtroom proceedings. Mr. Weinberg is fully oriented but in poor contact with reality. He is not capable of comprehending the seriousness of his case nor the recommendations of defense counsel. He is not capable of communicating effectively with counsel, weighing the merits of various defenses, or making decisions regarding numerous constitutional protections such as his right to trial, his right to an attorney, his right to enter into a plea, and his right to call witnesses, etc. Mr. Weinberg desires to testify in his own defense but cannot do so in a logical, relevant manner due to the severe symptoms of his mental disease.

(*Id*. at 10). Thus, Dr. Ryan concluded that Weinberg "lacks a rational and factual understanding of the proceedings against him, and is not capable of assisting counsel with his defense" and is therefore not competent to stand trial. (*Id*. at 10-11).

According to Dr. Ryan, Weinberg was able to articulate an understanding of the charges and proceedings against him. (*Id*. at 9). When asked, Weinberg repeated the charges against him and described various concepts involved in a criminal proceeding, such as a plea, oath, witness, evidence, verdict, sentence, and the roles of the prosecutor, defense attorney and judge in the case. (*Id*.). In spite of Weinberg's accurate expression, however, Dr. Ryan concluded that Weinberg did not have a "rational understanding of how the proceedings operate" as a result of his disordered thinking and delusions. Dr. Ryan further testified that he believed

that Weinberg was unable to assist his counsel with his defense as a result of his incoherent and illogical speech and delusional thinking.

Weinberg's own testimony at the hearing supports Dr. Ryan's conclusions. Upon taking the stand, Weinberg's attorney asked him to explain why he had raised medical issues with Dr. Ryan. His response quickly devolved into tangential and irrelevant issues, such as his belief that various United States presidents, a professor at the University of Rochester, and a Nobel Laureate scientist are trying to kill him. He testified to his belief that he was a victim of an anti-Semitic, racist plot by the University of Rochester Hospital to conceal from him his true medical condition. Counsel and the Court repeatedly reframed questions throughout Weinberg's eleven minutes of testimony, but each time elicited rambling, largely non-responsive testimony.

As a final consideration, I have personally observed Weinberg to be disruptive in court on several occasions. He is frequently prone to verbal outbursts and inappropriate, erratic comments. On several occasions, he had considerable difficulty complying with the Court's directions about appropriate behavior in court, often persisting in speaking over the Court during the proceedings. In addition, Weinberg has sent the Court numerous incoherent and rambling letters.

In sum, considering Dr. Ryan's report and testimony, Weinberg's testimony and, to a lesser extent, my own observations, I find by a preponderance of the evidence that Weinberg is presently suffering from a mental disease – specifically, paranoid schizophrenia – that renders him unable to rationally understand the nature and consequences of the proceedings against him and to assist properly in his defense. Accordingly, I recommend that the district court declare him incompetent to stand trial.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Stephen Weinberg be found currently incompetent to stand trial and order that he be committed to the custody of the Attorney General for a reasonable period, not to exceed four months, to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       January __6__, 2010

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

      *s/Marian W. Payson*
      MARIAN W. PAYSON
      United States Magistrate Judge

Dated: Rochester, New York
      January   6  , 2010

---

[3]Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).