UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                              08-MJ-4140

              v.

STEPHEN L. WEINBERG,

                              Defendant.
_____

Defendant, Stephen L. Weinberg ("Weinberg"), has been found incompetent to stand trial on a pending federal indictment. He is now confined at the Federal Medical Center at Butner, North Carolina ("Butner"). Officials at Butner believe that Weinberg should receive certain psychotropic medication which they believe may restore his competency. To date, Weinberg has steadfastly refused to voluntarily take such medication.

Physicians at Butner and the Government now request that this Court issue an order, pursuant to the principles established by the United States Supreme Court in *Sell v. United States,* 539 U.S. 166 (2003), authorizing officials at Butner to forcibly administer drugs to Weinberg. Weinberg opposes such a request. For the reasons that follow, the application to forcibly administer psychotropic medication, as proposed, is denied.

BACKGROUND

Weinberg was arrested on December 2, 2008 on a criminal complaint charging a violation of 18 U.S.C. § 875(c), that is, knowingly transmitting a threatening communication in interstate commerce. The complaint, and the affidavit attached to the complaint, allege that Weinberg, via an email communication, threatened Monroe County Court Judge Frank Geraci, who had previously issued an order in a state court case directing Weinberg to accept outpatient mental health treatment. Weinberg sent the email communication from his email address to various government officials, including the Vice President and the FBI, threatening to shoot Judge Geraci. Weinberg signed the email and apparently also telephoned an Assistant United States Attorney in Rochester and left a similar message on that attorney's voicemail.

Shortly after Weinberg's first appearance in court, his then-attorney moved for a mental competency determination and within days the Court granted the motion and directed that Weinberg be examined at a federal medical facility pursuant to 18 U.S.C. § 4241(a).

Weinberg was confined to the Metropolitan Correctional Facility in New York, New York for such an examination. Officials there issued a forensic report, dated March 4, 2009, concluding that Weinberg suffered from a mental disease or defect and was not competent to stand trial because he did not possess a rational and factual understanding of the proceedings, nor did he have the capacity to assist counsel.

After conducting a hearing, United States Magistrate Judge Marian W. Payson issued a Report and Recommendation that Weinberg was not competent to stand trial and that he should be committed to the custody of the Attorney General for a period of time to determine whether there

was a substantial probability that he would be restored to competency (Dkt. #32). There were further proceedings before this Court and eventually, on February 12, 2010, this Court entered an Order (Dkt. #34) directing that Weinberg be hospitalized for treatment at a federal medical facility for a reasonable period of time, pursuant to 18 U.S.C. § 4241(d)(1), to determine whether there was a substantial probability that in the foreseeable future Weinberg would attain the capacity to stand trial.

Pursuant to that order, Weinberg was committed to the facility at Butner. After several months, officials at Butner submitted a report to the Court, dated April 29, 2010 ("April 29 Report"). That report concluded that Weinberg continued to be incompetent, but that there was a substantial probability that his competency could be restored if he took anti-psychotic medication. Because Weinberg had refused to voluntarily take such medication, the treating physicians at Butner, Maureen L. Reardon, Ph.D., a staff psychologist, and Ralph Newman, M.D., a staff psychiatrist, requested a court order authorizing such involuntary medication. It is that request that is at issue in the present proceedings. Weinberg, through counsel, objected to that recommendation and, therefore, a hearing was scheduled. To assist Weinberg and his counsel, the Court authorized appointment of a psychiatrist, Dr. Rory P. Houghtalen.

On July 8, 2010, the Court conducted a hearing. Three witnesses testified, including Dr. Reardon and Dr. Newman, on behalf of the Government, and Dr. Houghtalen, on behalf of the defendant. Defendant was present but did not testify.

DISCUSSION

There are two forensic reports concerning Weinberg before the Court. The first, dated March 4, 2009, was the original evaluation from the Metropolitan Correctional Center which concluded that Weinberg was not competent to stand trial. The second report, the April 29 Report, also concluded that Weinberg was still not competent and, therefore, requested the forced medication of him.

Weinberg, now 63, received his undergraduate education at the Massachusetts Institute of Technology and reportedly earned a Ph.D. in physics and astronomy at the University of California at Berkeley. Weinberg has virtually no employment history and has lived off his parents' income until receiving Social Security Income benefits over 20 years ago. He has a lengthy history of arrests, often involving trespassing on various college campuses, including Harvard University.

Weinberg has had psychotic symptoms for the past 30-35 years. He has been treated and involuntarily committed to Strong Memorial Hospital in Rochester on several occasions. The conclusion there was that Weinberg suffered from a schizoaffective disorder, a bipolar disorder, with severe psychotic features.

In the report from the Metropolitan Correctional Center, it was noted that Weinberg exhibited persecutory delusions throughout the evaluation. A Metropolitan Correctional Center physician concluded that Weinberg suffered from schizophrenia, paranoid type. It was also noted (p. 9 of the Report) that Weinberg lacked insight into his persistent delusional beliefs and was therefore resistant to treatment. Because of that, Weinberg's prognosis for recovery was poor.

The April 29 Report from Butner reached similar conclusions concerning Weinberg's mental disease, that is, schizoaffective disorder, bipolar type. It recorded the lengthy history of treatment

for his psychotic symptoms which included disorganized thinking, gross behavioral disturbances and paranoid delusions. The opinion was that Weinberg's mental condition interferes with his rational understanding of the current legal proceedings.

Although Weinberg is now deemed to be incompetent, the April 29 Report opined that there was a substantial likelihood that with appropriate psychotropic medication, Weinberg could improve to such an extent that his competency to proceed "may be restored." (April 29 Report, p. 7). The officials at Butner therefore requested leave to involuntarily medicate Weinberg with psychotropic medications, believing that this was consistent with the requirements of the Supreme Court's *Sell* decision. The April 29 Report contained an analysis of Weinberg under the multi-prong test enunciated in *Sell*.

This Court's decision on the application to involuntarily medicate Weinberg must comport with the Supreme Court's requirements in *Sell*. In *Sell*, "the Supreme Court . . . ruled that an incompetent defendant may be involuntarily medicated for the sole purpose of rendering him competent to stand trial only if four criteria are satisfied: (1) there are important government interests in trying the individual; (2) the treatment will significantly further those interests; (3) the treatment is necessary to further those interests, considering any less intrusive alternatives, and (4) the treatment is medically appropriate." *United States v. Magassouba,* 544 F.3d 387, 396 (2d Cir. 2008).

The Second Circuit's most extensive discussion concerning the application of *Sell* is found in *United States v. Gomes,* 387 F.3d 157 (2d Cir. 2004), in which the court affirmed the district court's order, issued after an evidentiary hearing, permitting the Bureau of Prisons to medicate that defendant involuntarily. In *Gomes*, the court established that in this Circuit, "the relevant findings [in

support of involuntary medication] must be supported by clear and convincing evidence." *Id.* at 160. It is that standard that I must apply here concerning Weinberg.

In the matter pending before the Court concerning Weinberg, there is no question that the *Sell* test must be met because the sole purpose of the forced treatment is to render him competent for trial. There is no claim here that forced treatment is necessary because of Weinberg's dangerousness to himself or others or because the refusal to take drugs puts Weinberg's own health at risk. If those circumstances did exist, then the *Sell* factors would not apply and there would be no requirement for judicial intervention.

In the April 29 Report, Drs. Reardon and Newman set forth their opinions as to whether the *Sell* factors have been met. That Report, marked as Ex. 1 at the hearing, discusses these issues at pages 8-12, and both Dr. Reardon and Dr. Newman testified at the trial in support of involuntarily medicating Weinberg.

The first *Sell* prong, *i.e.* is whether there are important government interests in trying Weinberg, is a legal question and the Butner physicians rendered no opinion on it. In my view, the Government's present interest in continuing the prosecution of Weinberg is very low. This factor, then, tips decidedly in Weinberg's favor.

Although I do not minimize the charge -- threatening a judicial officer -- nonetheless, such a threat seems quite consistent with Weinberg's illness, schizophrenia with paranoid delusions. The fact that Weinberg publicized his ideation in such an open manner with copies to federal government officials and the FBI suggests that his actual intent to commit the act was delusional as well.

Another factor the Court should consider in determining whether there is an important government interest is the nature of the charge and the potential penalty. By statute, a conviction under 18 U.S.C. § 875(c) subjects the offender to a maximum term of five years imprisonment. The United States Sentencing Guidelines, however, demonstrate that a much lower sentence may actually be appropriate.

At the conclusion of the hearing, I directed the Government, in consultation with the United States Probation Office, to provide the Court with its analysis of the Sentencing Guidelines in this case. The Government complied with that request by letter dated July 21, 2010 (Dkt. #42).

That letter, which reflects the Government's view after consultation with the Probation Department, calculates that Weinberg has the lowest Criminal History Category of I with an Offense Level of 10. His Guideline range, therefore, would be 6-12 months. I note that Weinberg has already been in custody well past that time frame. He has been in custody since December 4, 2008, a period of approximately 21 months as of the date of this Decision and Order. If this Court orders medication, much more time will elapse before Weinberg possibly attains competency, and is formally indicted on the charge, and the matter proceeds to trial. One could certainly envision a year or more from today before the criminal charge was resolved. Such a time frame would result in Weinberg being incarcerated at least three times longer than the Guideline range suggested for this offense, and possible close to the statutory maximum. I question the wisdom, efficacy and fairness of that scenario. In my view, these matters certainly speak to whether there really is a strong governmental interest in now continuing the prosecution against Weinberg.[1]

---

[1] If Weinberg continues to be deemed incompetent, but is not prosecuted, there are
(continued...)

Weinberg does have a history of mostly minor offenses that occurred 25 or 30 years ago. Often the arrest led to no formal charges being filed. In fact, the report suggests that Weinberg's last arrest prior to the troubles on this instant matter occurred over 25 years ago, in 1985. Both the April 29 Report and testimony at the hearing before the Court demonstrate that the treating physicians at Butner do not believe that Weinberg is a danger to others; at the institution he has not acted violently while incarcerated, and is not so ill as to constitute a danger to himself or others (Ex. 1, p. 12). Dr. Reardon testified at the hearing that the physician's opinion was that Weinberg did not meet the criteria for forced treatment because of any imminent danger to himself or others.

Should Weinberg be convicted and face sentencing today, it is not unreasonable to anticipate that he might receive a sentence of time served. Based on Weinberg's prior record, as set out in the Pretrial Services Report prepared when Weinberg was first presented to this Court, the facts do not necessarily suggest that a sentence greater than that would be warranted or necessary, when considering all the factors under 18 U.S.C. § 3553(a). *See United States v. Feretti,* No. 1:08-M-51, 2009 WL 4730227, at *4 (N.D.NY. Dec. 2, 2009) (denying government's motion for involuntary medication, in part because defendant had already been incarcerated for longer period than any sentence she would likely receive).

Concerning the second prong referenced in the *Sell* decision, the Court must find, by clear and convincing evidence, that the proposed treatment would "significantly" further the Government's

---

[1](...continued)
procedures available, including civil commitment to either state or federal facilities if it is determined that Weinberg constitutes a substantial risk to himself or others. 18 U.S.C. § 4246.

interest and that the treatment is necessary. The April 29 Report finds that Weinberg is not amenable to other types of treatment and, therefore, anti-psychotic medication is necessary.

It does appear that unless Weinberg changes his tack, other less intrusive means of psycho therapy, such as verbal counseling, will not be effective to return Weinberg to competency. The April 29 Report from Butner, the testimony of Dr. Newman, as well as the testimony of Dr. Rory Houghtalen, establishes that fact to my satisfaction, and I do not believe that the defense contests it.

Butner officials believe that only the administration of psychotropic medications has the possibility of restoring Weinberg to competency. But even Butner's physicians recognized that competency is not always restored by taking such medication. Dr. Reardon testified that the majority of patients recover but that the individual would be required to take the medication for a long time in the future to monitor the chronic condition.

Dr. Newman testified that Weinberg's long history of psychosis without treatment was a negative in assessing the likelihood that the medication would restore his competency. He testified that the treatment course may require at least 8-10 weeks with a success rate of only between 50 and 70%. (April 29 Report, p. 10). Dr. Newman testified that with Weinberg's prior history, his treatment efficacy would be lower than 70%.

Both the April 29 Report and Dr. Newman discussed the several side effects that can result from ingesting psychotropic medication. The April 29 Report (p. 8) stated that although some patients have no or only minor effects from the medication, others may experience "significant" side effects.

Dr. Newman recommended Haldol and Prolixin, both of which have several side effects, including "movement disorders to include Parkinsonian effects, dystonic reactions, akathisia and tardive dyskinesia. (April 29 Report, p. 9). The Butner April 29 Report describes the not inconsequential side effects that may occur. and the rate of such incidents. Although the report indicates that some side effects can be treated with medication, even that medication has its own side effects. The report indicates that muscle contractions or Parkinsonian effects are most common, occurring in approximately 15% of the patients. Such may be corrected by administering another drug, Cogentin, but the report acknowledges that chronic administration of this drug may increase the risk of tardive akathisia, which is a most serious side effect. In fact, the report noted that such a side effect may be irreversible and incapacitating. Although such occurs in only 4% of patients per year, the report indicates that it has a "lifetime prevalence of approximately 30%." (April 29 Report, p. 10). The report also indicates that the longer a patient is on the typical anti-psychotic drugs, the more likely the patient is to develop adverse side effects.

Considering all the *Sell* factors, I believe that the Government has failed to establish, by clear and convincing evidence, that this Court should order forced administration of psychotropic drugs. There are several reasons for my apprehension. First, I think there are very real potential side effects associated with the proposed medication. Some side effects may be assuaged with other medication but some potential side effects, as testified to by both Dr. Newman and Dr. Houghtalen, can be permanent, irreversible and in some cases life threatening.

Weinberg is not a young man and does suffer from other medical conditions, such as diabetes and hypertension, which could be exacerbated by the proposed medication. Dr. Newman indicated

on cross examination that certain syndromes occasioned by ingestion of anti-psychotic medication had various side effects which could cause death. These were not, however, included in his April 29 Report. Dr. Newman did discuss an effect called tardive dyskinesia which could become permanent and irreversible. Dr. Newman conceded that defendant's age, 62, together with a high level of medication, could heighten the risk of this side effect. Dr. Newman's response to questions relative to side effects were that they could be monitored and controlled through the course of treatment by modifying the medication or administering other drugs.

Dr. Rory Houghtalen testified on behalf of the defendant. He provided the Court with a summary of his very extensive background, education and experience as a forensic psychologist. His conclusion was that forced medication presented a medical risk to Weinberg and, most significantly, there was not a substantial likelihood that Weinberg would be restored to competency based on all the factors in this case. I found that testimony to be compelling, and I accept that testimony.

First of all, Dr. Houghtalen had much more information concerning Weinberg's past history than did the Government's physicians. That history included conversations with family and friends of the defendant, as well as the treatment records covering the past 20-30 years from three different psychiatric facilities: Strong Memorial Hospital in Rochester, New York, the Rochester Psychiatric Center and the Hutchings Psychiatric Center in Syracuse, New York. He noted that there were "several volumes of records concerning Weinberg's treatment at those facilities." They included records of treatment during the 1990s as well as three separate admissions for treatment at Strong Memorial Hospital. In sum, it appears that Dr. Houghtalen had much more substantial medical and personal information concerning Weinberg than did the Government's doctors.

During the hearing, I noted that the Government had not taken steps to obtain any of the prior medical records of the defendant. Dr. Newman, on cross examination, did opine that such records were not necessary. I find this difficult to accept since I would think the voluminous and detailed records of Weinberg's prior treatment may well speak to both the potential effects of medication on him and the likelihood that the proposed regime at this stage, in 2010, would be substantially likely to return Weinberg to competency.

In any event, at the conclusion of the hearing, I gave the Government the opportunity to subpoena such records and make them available to the physicians at Butner to determine if they wished to submit a supplemental report armed with that material. The Government apparently elected not to take that course of action since I have received no further report from Butner on Weinberg's case.

Dr. Houghtalen testified that after reviewing all the material, he agreed with the consistent diagnosis of Weinberg that he suffers from schizophrenia, bipolar disorder, and schizoaffective disorder. Although he believed Weinberg might obtain some benefit from the medication, he disagreed with the Government's doctors that there was a substantial likelihood that Weinberg would recover competency. Weinberg has not been suffering for brief period of time; if so, competency might well be restored. But, in Dr. Houghtalen's view, since Weinberg suffered from his disease for almost thirty years, since at least 1982, his delusions are fixed and rigid. In Houghtalen's view, these conspiratorial fixations have been present "for literally decades." Dr. Houghtalen noted that Weinberg's lengthy treatment history -- without much success -- makes a return to competency now very unlikely. He found Dr. Newman's assessment that there was a 50-70% chance of restoring

competency to be "wildly optimistic." In fact, Dr. Houghtalen testified that in over a quarter century of practice in this area, he has *never* seen anyone with the type of fixed delusions held by Weinberg be able to recover from those delusions and be returned to competency. *See United States v. Austin,* 606 F.Supp.2d 149, 152 (D.D.C. 2009) (denying government's motion where government failed to show that involuntary medication was substantially likely to restore defendant to competency).

Dr. Houghtalen also testified at some length about the potential serious side effects that exist with Weinberg because of his age, his medical condition and also because he has already suffered from side effects relating to prior exposure to anti-psychotic medication. Specifically, because there was a prior history of tardive dyskinesia, Weinberg is now more at risk of developing side effects with each new exposure to medication.

Dr. Houghtalen emphasized that on three different occasions Weinberg has been involuntarily treated with psychotropic medication but, regardless of the medication, Weinberg's delusional ideas remained intact. Often, after Weinberg received such medication, he was directed to continue medication outside of a controlled environment and he failed to do so.

Dr. Houghtalen also noted that the Government's doctors did not have available to them the lengthy prior history concerning Weinberg's abuse of drugs and alcohol. Dr. Houghtalen believed there was a substantial history of such substance abuse, and he believed that type of abuse was also a negative factor in terms of Weinberg's responsiveness to psychotropic medication and his long term prognosis to recover competency.

CONCLUSION

After considering all the above matters, I deny the request made by the Government at the behest of treatment providers at the Butner Medical Facility, in the April 29, 2010 Report, to involuntarily administer psychotropic medication to defendant Stephen Weinberg. I believe the Government has failed to prove by clear and convincing evidence all that must be established under the Supreme Court's decision in *Sell v. United States,* 539 U.S. 166 (2003), for the Court to order such involuntary medication.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 28, 2010.